[Civ. No. 4668.    Second Appellate District, Division Two.—June 3, 1927.]

ELSIE MEYER, Respondent, v. HELLMAN COMMERCIAL TRUST & SAVINGS BANK (a Corporation), Appellant.

[1] Trial—Depositions—Irrelevancy of Answers.—Counsel, desiring to object to a series of questions and answers in a deposition with which they are familiar, should make any desired objection as each question is read, rather than to wait for the reading of the entire series and then move to strike out that portion of the deposition on the ground that the irrelevancy of the answers could not have been anticipated.

[2] Banks and Banking—Money Paid Out on Forged Signature—Knowledge of Forgery—Evidence.—In an action against a bank to recover money paid out on checks bearing plaintiff's forged signature, where the deposition of the person committing the forgery was read, a statement therein that at the time of an attempted adjustment an officer of the bank knew that the signatures had been forged and advised settlement was irrelevant and should have been excluded.

[3] Id.—Evidence—Depositions—Motion to Strike.—In such action, the trial court's denial of defendant's motion to strike out a portion of the deposition of the person who committed the forgery which stated that an officer of the bank, after knowledge of the forgery, had advised the deponent to make good, was not prejudicial, where similar testimony, previously given by the same witness in the deposition, already had been admitted without objection.

(1, 2) 7 C. J., p. 669, n. 38; 18 C. J., p. 761, n. 14.    (3) 4 C. J., p. 963, n. 59.

APPEAL from a judgment of the Superior Court of Los Angeles County. G. R. Freeman, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Page & Hurt for Appellant.

No appearance for Respondent.

JOHNSON, J., *pro tem.*—This is an action for money had and received, brought by plaintiff as one of defendant's depositors with two accounts, one a commercial account opened in December, 1920, and the other a savings account opened in March, 1921. Judgment was rendered for plaintiff for $3,702.36, and from that judgment defendant appeals.

Respondent neither having filed a brief nor presented oral argument, the appeal must be determined upon the trial record with the aid of appellant's brief alone.

The controversy arose out of withdrawals of money upon certain checks bearing plaintiff's name as drawer, but, as she claims, with the signatures forged by a man named Berthold, now in the penitentiary under sentence for forgery of plaintiff's name in a wholly independent transaction, which occurred in December, 1921, and in no way affected this defendant. The testimony on behalf of plaintiff was her own, her daughter's, and Berthold's, who, in a deposition taken in San Quentin prison on behalf of plaintiff, swore that by forging plaintiff's name to checks, some of which, paid and canceled, were introduced in evidence, he had drawn about $4,000 from plaintiff's account with defendant, and had lost the money in gambling. The chief witness called by defendant was a handwriting expert, I. N. Inskeep, who pronounced the disputed signatures to the checks in evidence to be genuine signatures of plaintiff. The court might equally well have decided upon the evidence for defendant rather than plaintiff, but nevertheless it did resolve the conflict in favor of plaintiff. Defendant frankly concedes that having been unsuccessful in convincing the trial court of the genuineness of the signatures in question, it cannot hope for a reversal upon the evidence as a whole. The theory of defendant was that plaintiff had either shared in the moneys drawn (though this was denied both by plaintiff and Berthold), or that plaintiff had put into Berthold's hands checks signed in blank by herself, and that Berthold had then filled in the amounts to suit his own purposes, the body of the disputed checks being in his undisguised and admitted handwriting.

Defendant's reliance is placed, therefore, upon the alleged error in admitting at the trial a certain portion of Berthold's deposition in reference to a conversation between him and Mr. Bell, vice-president of the defendant bank. Plain-

tiff testified that when she learned in August, 1921, that there was something wrong with her account, she at once sought out Berthold and that he confessed to her that he had drawn her money, adding that he had only borrowed it and would pay her back. It appears that within the next few days Berthold did deposit in plaintiff's account, on August 5, 1921, a check for $4,000, which, however, was dishonored by the bank on which it was drawn. In his deposition Berthold declared that shortly before he deposited this check of $4,000 he called at the bank and had a conversation with Mr. Bell, in the presence of a representative of the American Bankers Association, and that in that conversation he told Mr. Bell that he had forged Mrs. Meyer's name to upward of twenty checks, aggregating in amount $4,000. After Berthold had given this testimony in his deposition, the following questions were asked and answered: "Q. What else did you tell him? A. Well, he had told me I had better try to make it up; to pay the money back, and I told him that I would; that I thought I could get my folks to make it up, so I sent a couple of telegrams to my folks but I didn't get any answer back from them. Q. Where were your folks? A. In the east. Q. What else was said to Mr. Bell? A. Well, he told me the best thing I could do was to make the thing right in some way." The record indicates that at the taking of the deposition an objection was made by defendant's attorney at this point, and also a motion to strike out the portion relating to the conversation between Berthold and Bell; and when the reading of the deposition at the trial had reached this stage, Mr. Williams, representing the defendant, renewed his objection and his motion to strike, upon the ground that the portion of the deposition relating to the conversation had between the witness and Mr. Bell did not prove or tend to prove any issue in the case, and was incompetent, irrelevant and immaterial. Mr. Williams insisted further that the relevancy of the conversation could not be determined in advance of the answer; that the conversation recited contained no admission by Mr. Bell that could be binding upon the bank, and that it had no tendency to prove or disprove any issue in the case. In opposition to the motion plaintiff's attorney argued: "It is a conversation with the defendant, in which the defendant and this witness talked

about this particular matter that is in issue. The witness told the defendant certain things, and the defendant told the witness certain things, and it is very material in the light of the entire case, if your Honor please, that it should be brought to the bank, approximately at the time of the deposit of the $4,000, that there was an admitted forgery, and that Mr. Bell, representing the bank, told this witness he ought to make it good. I think it is very material." The court allowed the testimony to stand. Defendant now asserts that the court construed this testimony as evidence of an admission on the part of defendant that the disputed signatures were in fact forgeries.

[1, 2] It is true that plaintiff's attorney said in his argument that it was material that it should be brought home to the bank that "there was an admitted forgery." The only admission, of course, was the admission of Berthold himself that he had committed forgery; and there is nothing in the deposition indicating any admission on the part of the bank, or forming a basis for the inference of any such admission. The mere rejoinder of Mr. Bell to the effect that if Berthold had cashed checks on signatures forged by him the best thing for Berthold to do was "to make the thing good," was no more than a recommendation to him that if he had secured money by fraudulent means he should make reparation. At the trial the questions and answers were being read from Berthold's deposition, with which defendant's attorney was already familiar; and the better course would have been to make any desired objection as a question was read, rather than to wait for the reading of a series of questions and answers and then move to strike out that portion of the deposition upon the ground that the irrelevancy of the answers could not have been anticipated. The statement in question not being an admission, it had no relevancy to the issue, and upon timely objection or motion should have been excluded. However, even if the motion had been granted, there would have been left in the record similar testimony, previously given by the same witness in the deposition and already admitted at the trial without objection. One of the questions asked Berthold was how he came to make the deposit of $4,000 on August 5, 1921. In the deposition he answered: "Well, there is a whole lot to be said in order to answer that question. Mr. Bell, the vice-

president of the Hellman Bank, was really the cause for it being put in; he knew about it, and told me that I better make it good." When this answer was read at the trial, the attorney for the defendant made a motion to strike out "that part relative to what Mr. Bell knew," on the ground that it was a conclusion; and after discussion, in which the court and both counsel took part, defendant's attorney, referring to the sentence, "he told me I better make it good," said, "I do not move to strike out that part. The only part I move to strike out is that part relative to what Mr. Bell knew . . . , on the ground that it states a conclusion of the witness." The court granted this motion, whereupon plaintiff's attorney said, "Well, it is just merely those four words, 'he knew about it'; to which defendant's attorney responded, 'Yes.' "

[3] Under these circumstances it cannot be said that defendant was prejudiced by denial of the motion to strike out testimony substantially the same, when read a few moments later from the succeeding page of the deposition.

The judgment is affirmed.

Craig, Acting P. J., and Thompson, J., concurred.